### THE FRED E. RICHARDS.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 57.

TOWAGE (§ 15*)—STRANDING OF TOW—LIABILITY OF TUG.

Evidence considered, and *held* insufficient to establish the claim that the stranding of the last one of three barges in a 3,400-foot tow on a shoal to the leeward of the South Channel in entering Boston Harbor in a high wind was due to the fault of the tug in navigating negligently before entering the channel.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 30–38; Dec. Dig. § 15.*]

Appeal from the District Court of the United States for the Southern District of New York.

D. R. Englar, of New York City, for appellants.

E. E. Blodgett, of Boston, Mass., for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. March 3, 1913, the tug Richards set out from New York, bound for Boston, with a tandem tow of three barges, Luzon, Rockland Co. No. 1, and Whitman, in the order named. At 8:30 p. m. of the 6th she passed the light on the Graves Shoal off Boston Harbor, the wind blowing a gale from west-northwest, and shaped her course to enter by the channel called on the chart South Channel and by the witnesses Broad Sound Channel. It is nearly a quarter of a mile wide, runs about northeast and southwest and is defined by red buoys on the western and black buoys on the eastern side, which are lighted at night, mid-channel being indicated by the Lovell Island range lights.

The total length of the tug and tow was about 3,400 feet. At about 10:15 p. m., while going up the South Channel, the barge Whitman

---

fetched up on a shoal called the Devil's Back, which lies to the east-ward of and close to the channel, and nearly midway between two black buoys, which are about a mile apart. One of the Whitman's hawsers parted and the other pulled out the towing bitt. The tug proceeded with the balance of the tow to the quarantine ground, and then returned, taking off the crew of the Whitman, which with her cargo became a total loss. The owner of the cargo filed this libel against the tug.

The charge of negligence chiefly relied on, and the only one we need consider, is that the tug navigated negligently before entering South Channel. To enter properly it was necessary for her, after rounding the Graves Shoal, to swing about eight points from north-west to southwest. The libelant's experts say, what is manifestly true, that to do so with so long a tow in a gale from west-northwest it would be necessary, notwithstanding that the last of the flood tide helped the tow to stand up against the wind, for the tug to hold her course to the northward and westward past the line of the Lovell Island ranges be-fore turning southward for the South Channel, so as to allow for the drift of the tow to leeward. It is argued that a failure to do this brought the tow broadside across the channel and so stranded the Whitman.

Captain Miller of the tug marked the course he followed on the chart, and if his diagram be taken literally the disaster is quite consist-ent with this theory of negligence. The difficulty of adopting it is that, as the tow was making but 2 to 2½ knots an hour, the lights of the barges would have shown to all concerned the dangerous drift to lee-ward for nearly an hour before the stranding, yet no one noticed it. The evidence for the tug is that she kept well to the windward of the Lovell Island range next to the line of the buoys on the starboard and westward side of the channel, all the barges keeping to the windward of the buoys on the port side. Indeed, Captain Loux of the Whitman admits that he entered South Channel to the windward of the first black buoy, and passed to windward of the second, and that, although a little to the leeward of the range, he apprehended no danger what-ever before the barge fetched up. We think this inconsistent with the libelant's theory of a great drift to leeward before entering South Channel. What happened is consistent with a sheer caused by bad steering, or by a sudden gust of wind, or by the tug's changing her course to starboard to enter the President's Channel. The captain of the barge attributed the accident to the latter cause. But neither of these causes would depend upon any negligence of the tug in making the turn into the South Channel.

Judge Mayer, in the court below, thought all the witnesses to be honest and intelligent. In this situation, although no confident conclu-sion can be reached on the testimony, we think there is quite enough to sustain his finding that there is no sufficient proof of negligence upon the part of the tug.

The decree is affirmed.